[Cite as *In re I.F.*, 2026-Ohio-2657.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: I.F.

C.A. No.     25CA012284

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     23JC67874

DECISION AND JOURNAL ENTRY

Dated: July 13, 2026

SUTTON, Judge.

{¶1}    Appellant, K.F. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child and placed the child in the permanent custody of Lorain County Children Services ("LCCS").  This Court affirms.

I.

{¶2}    Mother is the biological mother of I.F., born December 27, 2013.  Mother is married to the child's father ("Father"), but he did not appeal the trial court's judgment.   The trial court proceedings also involved an older sibling of I.F., who was ultimately placed in a planned permanent living arrangement, and is not a party to this appeal.

{¶3}    LCCS has a history with this family dating back to 2016 because of prior referrals that are not detailed in the record.  During January 2023, the agency received a referral that Mother, Father, and their two children were homeless and had been sleeping in their car.  LCCS was also

concerned that each parent had long-term, untreated mental health and substance abuse disorders. The agency attempted to work with the family on a voluntary basis for many months, but the parents denied that they had any parenting problems and were not willing to engage in substance abuse or mental health treatment.

{¶4} Mother was later charged with felony drug possession and obstructing official business. She initially agreed to engage in treatment in lieu of conviction but, after she repeatedly tested positive for methamphetamine, she was ordered to undergo residential drug treatment. She left the residential treatment program after two days. The criminal court again offered her the option of completing residential drug treatment to avoid criminal conviction. Mother chose instead to be convicted of both crimes and serve a 120-day period of incarceration. During her four months of incarceration, Mother had no contact with I.F.

{¶5} On November 16, 2023, LCCS filed a complaint to allege that I.F. was a neglected and dependent child because of the parents' homelessness, ongoing methamphetamine use, failure to enroll the child in school, and Mother's criminal conviction and incarceration. The juvenile court later adjudicated the child neglected and dependent, placed her in the temporary custody of LCCS, and adopted the case plan as a court order.

{¶6} The case plan required Mother to obtain mental health and substance abuse assessments and follow all treatment recommendations, submit to regular drug testing, and demonstrate that she had stable income and housing and could otherwise provide for the basic needs of her child. Mother did not like the LCCS caseworker and refused to work with him. She did not obtain a mental health or substance abuse assessment and did not engage in any treatment. Mother usually refused to submit to drug testing but, when she did, she tested positive for

methamphetamine. Mother claimed to have stable income and housing, but she never verified her income to LCCS, and she refused to allow the caseworker to see where she lived.

{¶7} Throughout this case, I.F. engaged in mental health treatment because of her inability to control her emotions and behavioral outbursts. She was diagnosed with trauma and stressor related disorder and worked with counselors and psychiatric medication providers to help regulate her emotions. The child was easily agitated, expressed suicidal thoughts, and exhibited self-harming behavior. After disrupting from two foster homes, LCCS placed I.F. in a residential mental health treatment facility, where she received mental health treatment for the remainder of the case.

{¶8} Mother visited I.F. inconsistently during this case and never inquired about her progress in counseling or her wellbeing. Mother sometimes came to visits under the influence of methamphetamine and/or argued with the agency staff, which caused the agency to end many of her visits early. Mother would sometimes also argue with I.F. during visits. Although I.F. told others that she missed Mother, she was also upset that Mother was not working with the agency on the reunification goals of the case plan. Because of the friction between Mother and I.F., the child occasionally requested that she not be required to visit Mother.

{¶9} On October 30, 2024, LCCS moved for permanent custody of I.F. Mother's visits with I.F. were conducted via video calls after I.F. relocated to the residential treatment facility. Two months before the final hearing, the juvenile court suspended Mother's visits with I.F. because she continued to use methamphetamine and behaved inappropriately during the visits.

{¶10} The case proceeded to a final hearing before the juvenile court judge. Mother alternatively requested that the court return I.F. to her custody or extend temporary custody for another six months. At the hearing, LCCS presented undisputed evidence that Mother had refused

to comply with the reunification requirements of the case plan. Mother also testified at the hearing and did not deny that she had failed to engage in case plan services. Mother had refrained from using drugs only during the 120 days that she was incarcerated and began using methamphetamine within two days after she was released. She admitted that she continued to use methamphetamine two to three times per day, including on the days of the permanent custody hearing, but insisted that she did not have a substance abuse problem. Although Mother had failed to verify to LCCS that she had sufficient income to meet her child's basic needs, she admitted that she spent approximately $100 per week on methamphetamine.

{¶11} After hearing the evidence, the trial court found that permanent custody was in the child's best interest and that she could not or should not be returned to Mother's custody because Mother "failed continuously and repeatedly to substantially remedy the conditions" that caused I.F. to be placed outside the home and "demonstrated a lack of commitment toward the child[.]" *See* R.C. 2151.414(B)(1)(a); 2151.414(E)(1) and (4). Based on those findings, the trial court terminated parental rights and placed I.F. in the permanent custody of LCCS. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

A REVERSIBLE ERROR EXISTS BECAUSE AN ATTORNEY WAS NOT APPOINTED TO REPRESENT THE CHILD[] AT TRIAL WHEN A CONFLICT EXISTED BETWEEN [THE CHILD'S] EXPRESSED WISHES AND THE GAL'S RECOMMENDATION.

{¶12} Mother does not challenge the merits of the trial court's decision that clear and convincing evidence demonstrated that I.F. could not or should not be returned to the custody of either parent, based on two subsections of R.C. 2151.414(E), or that permanent custody was in the child's best interest. Instead, Mother's sole assignment of error is that the trial court committed

reversible error because it failed to appoint independent counsel to represent I.F. because her "expressed wishes" conflicted with the recommendation of the guardian ad litem.

{¶13} A child who is the subject of a permanent custody proceeding may be entitled to independent counsel if the guardian ad litem recommends a disposition that conflicts with the child's wishes. *In re J.P.-M.*, 2007-Ohio-5412, ¶ 53 (9th Dist.), citing *In re Williams*, 2004-Ohio-1500, syllabus and ¶ 18. Juv.R. 4(C) requires the trial court to appoint independent counsel to represent the child only if it finds that an actual conflict exists between "the role of the Guardian ad litem and the interest or wishes of the child[.]" This Court has repeatedly held that "'to demonstrate a "conflict" between the child's wishes and the guardian's recommendation that permanent custody is in the child's best interest, the record must demonstrate that the child has repeatedly and consistently expressed the affirmative desire to return to the parent's home.'" *In re A.M.*, 2024-Ohio-1152, ¶15 (9th Dist.), quoting *In re L.F.*, 2021-Ohio-3431, ¶ 18 (9th Dist.).

{¶14} Initially, this Court must emphasize that Mother did not raise this issue at any point during the trial court proceedings. Therefore, she has forfeited all but plain error on appeal. *See, e.g., In re L.F.*, 2025-Ohio-1643, ¶ 16 (9th Dist.); *In re C.W.*, 2024-Ohio-4659, ¶ 23 (9th Dist.); *In re T.B.*, 2014-Ohio-4040, ¶ 12 (9th Dist.). Mother has not argued or demonstrated plain error on appeal.

{¶15} Mother has failed to point to evidence in the record to even suggest that there was a conflict between the wishes of I.F. and the recommendation of the guardian ad litem. The record fails to reveal that I.F. repeatedly or consistently expressed a desire to return to Mother's home. In fact, there was no evidence at the hearing that I.F. ever expressed a desire to return to Mother's custody. The guardian ad litem testified at the final hearing that I.F. missed Mother and wanted to see her sister, but she said nothing about I.F. wanting to return to Mother's home. The trial

court reasonably concluded that, although I.F. missed Mother, she had not expressed a desire to return home.

{¶16} Given the evidence before the trial court, there was no reason for it to sua sponte appoint independent counsel to represent I.F. Mother has failed to demonstrate any error, much less plain error. Therefore, her assignment of error is overruled.

## III.

{¶17} Mother's assignment of error is overruled. The judgment of the Lorian County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
FLAGG LANZINGER, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

ALISA BOLES, Attorney at Law, for Appellant.

ANTHONY CILLO, Prosecuting Attorney, and DARLENE D. AMATO, Assistant Prosecuting Attorney, for Appellee.